UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Ian Doran,<br>　　　　Plaintiff,<br><br>v.<br><br>Fidelity Brokerage Services LLC,<br>　　　　Defendant. | )<br>)<br>)<br>)<br>)　C.A. No. 1:24-cv-00211-MSM-AEM<br>)<br>)<br>)<br>) |

**REPORT AND RECOMMENDATION**

AMY E. MOSES, United States Magistrate Judge.

This litigation arose from an employment dispute between Plaintiff Ian Doran and his former employer Fidelity Brokerage Services LLC ("Fidelity"). The case was removed to federal court on May 24, 2024 and ultimately proceeded to private mediation. ECF No. 1; ECF No. 13-1 at 3-4. Pending before the Court is Fidelity's Motion to Enforce Settlement Agreement ("Motion to Enforce") (ECF No. 13). Mr. Doran filed an Objection to the Motion to Enforce (ECF No. 15) and Fidelity filed a Reply (ECF No. 16). The Motion to Enforce was referred to me for determination. I submit my findings as a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)(1) and recommend that the Motion to Enforce be GRANTED.

　　**I.　BACKGROUND**

Mr. Doran alleges that Fidelity unlawfully discriminated and retaliated against him on the basis of sexual orientation when he was subjected to a sexual harassment investigation and ultimately terminated on August 2, 2022. ECF No. 1-1 ¶¶ 13, 55-56, 59. Mr. Doran's Complaint alleges that Fidelity further discriminated against him by putting a "defamatory" and "career

ending" comment on his Financial Industry Regulatory Authority ("FINRA") Uniform Termination Notice for Securities Industry Registration ("Form U5").  *Id.* ¶¶ 51-53, 56, 59. Fidelity is a member of FINRA and therefore is required to submit a Form U5 when an employee associated with its registration leaves Fidelity.  ECF No. 13-1 at 3.  Mr. Doran's Form U5 lists the reason for his termination as "Discharged" and the termination explanation states "Concerns regarding unprofessional interactions with colleague.  Not customer or sales practice related." ECF No. 13-2 at 39.  This Form U5 language is at the crux of the Motion to Enforce.

The matter proceeded to private mediation.  Both parties state that they spent a significant portion of the mediation discussing whether and how to amend the Form U5.  *See* ECF No. 13-1 at 4; ECF No. 15-1 at 6.  Mr. Doran states that Fidelity "went hours without substantively moving from their prior position" on the Form U5 language so he "reluctantly agreed to move on" from discussing the Form U5 language to see if Fidelity's language "combined with a substitutional monetary offer would be acceptable" to him.  ECF No. 15-2 at 2.

On April 21, 2025, at the end of the mediation, the parties executed a Term Sheet in which they "agree[d] upon . . . binding terms to settle the claims."  ECF No. 13-2 at 2.  The terms include that Fidelity will pay Mr. Doran $45,000 and Mr. Doran will release and dismiss with prejudice all claims against Fidelity.  *Id.*  The Term Sheet specifies that "[w]ithin thirty days of filing of the Stipulation of Dismissal with prejudice, Fidelity will cause to file an amended FINRA form U5 related to Doran's separation of employment to state:  'Permitted to Resign.  Concern about interaction with a coworker.  Not customer or sales practice related.'"  *Id.*  The Term Sheet contemplates execution of a formal settlement agreement "based on the terms set forth in [the] Term Sheet" but does not state that any of the terms are subject to further negotiation.  *Id.* at 3. Mr. Doran, his attorney, and a representative for Fidelity each agreed to and signed the Term Sheet.

*Id.* Mr. Doran does not dispute that the aforementioned language appears in the Term Sheet or that he signed it. *See* ECF No. 15-1 at 1. He contends, however, that the agreed-upon Form U5 language in the Term Sheet should now be changed.

A few days after signing the term sheet, on April 25, 2025, Mr. Doran's counsel emailed counsel for Fidelity proposing to reduce the cash settlement from $45,000 to $40,000 if Fidelity agreed to further amend the language on the Form U5 to state that Mr. Doran's termination was "Voluntary." ECF No. 13-2 at 45. On May 6, 2025, Fidelity rejected the offer and provided a draft settlement agreement. *Id.* On June 2, 2025, Mr. Doran reached out through different counsel[1] and proposed that the Form U5 be amended to state "Other – Separation by Agreement." *Id.* at 48. Fidelity rejected that offer and sought to have Mr. Doran sign the settlement agreement. *Id.* After conferencing with the Court, Fidelity was permitted to file this Motion to Enforce. *See* Minute Entry (Sept. 2, 2025).

## II. ANALYSIS

### A. No Genuinely Disputed Question of Material Fact

This Court retains the inherent power to enforce settlement agreements entered into by parties to an action pending before it. *Tremblay v. Ameriprise Fin. Servs., Inc.*, C.A. No. 14-542S, 2017 WL 3278951, at *2 (D.R.I. Apr. 5, 2017) (citing *Dankese v. Def. Logistics Agency*, 693 F.2d 13, 16 (1st Cir. 1982)), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 120399 (D.R.I. Aug. 1, 2017). The Court may "summarily enforce the agreement" without an evidentiary hearing if "there is no genuinely disputed question of material fact regarding the existence or terms of that agreement." *Fid. & Guar. Ins. Co. v. Star. Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2008).

---

[1] Counsel in the June 2, 2025 communication specified that he represents Mr. Doran "in a limited capacity, only with respect to his U5." ECF No. 13-2 at 48.

Mr. Doran does not dispute the existence of the Term Sheet. ECF No. 15-1 at 1. The Term Sheet reflects a clear and present intent by Mr. Doran and Fidelity to settle all claims, it contains clear and unambiguous terms, and Mr. Doran agreed to be bound by the Term Sheet in writing while represented by counsel. *See* ECF No. 13-2 at 2-3. The Term Sheet specifies that its terms are "binding" and "Counsel will prepare and the Parties will execute a formal settlement agreement *based on the terms set forth in this Term Sheet*[.]" *Id.* at 3 (emphasis added).

Mr. Doran argues that "[w]hile Defendant claims that the language of the Form U5 is not a material term of the settlement . . . it is extremely material to" him. ECF No. 15-1 at 1. While it is clear that this term is of great import to Mr. Doran, materiality is not a subjective standard in the context of a settlement agreement: "A fact is 'material' when it pertains to, among other things, the methods, and amounts of monetary distribution; the mutual releases of all parties; or the dismissal of the case with prejudice.'" *Jefferson v. Piccirillo*, No. 14-475-M-LDA, 2015 WL 3700796, at *2 (D.R.I. June 12, 2015); *see also MacCarone v. Siemens Indus., Inc.*, C.A. No. 20-cv-259-JJM-LDA, 2024 WL 4493563, at *3 n. 1 (D.R.I. Oct. 15, 2024) ("'In the context of settlement agreements, court have found that the amount to be paid and the claimant's release of liability are the material terms.'") (quoting *Blackstone v. Brink*, 63 F. Supp. 3d 68, 77 (D.D.C. 2014)). Furthermore, Mr. Doran's focus on the materiality of the Form U5 term itself is misplaced—this is not a situation where the roadblock to settlement is a term that was not memorialized in the written agreement or was conditional upon further negotiation. *See Jefferson*, 2015 WL 3700796, at *2 ("A 'genuinely disputed' question of material fact arises when the terms or existence of the agreement itself are in question, or the language of the terms is ambiguous."). The Form U5 language was discussed, agreed upon, memorialized in the Term Sheet in clear and unambiguous terms, and assented to in writing while represented by counsel.

4

Mr. Doran then goes on to argue that "there is no principle, law, rule, or regulation that would prohibit Defendant" from further amending the Form U5 language. ECF No. 15-1 at 2. He laments Fidelity's unwillingness to negotiate the term further after executing the Term Sheet. *Id.* at 2-8. Mr. Doran's focus on Fidelity's ability and willingness to further amend the Form U5 language is again misplaced. The language was negotiated at length during the mediation, and Mr. Doran admits that "[w]hen the mediation dragged on for hours without Defendant being willing to substantially change the U5 Form language . . . Plaintiff moved on in the mediation to see if he could get enough compensation to make up for having a forced resignation of his U5 Form." *Id.* at 6. He ultimately agreed to a $45,000 monetary settlement and Fidelity's preferred U5 language, as memorialized in the Term Sheet. While he clearly regrets making that tradeoff, such is the nature of negotiation.

The Term Sheet is an enforceable agreement. Because Mr. Doran does not raise any genuinely disputed question of material fact regarding the existence or terms of the Term Sheet and does not articulate a genuine question of fact regarding his duress claim, as discussed *infra*, there is no need for an evidentiary hearing on the Motion to Enforce. *Malave v. Carney Hosp.*, 170 F.3d 217, 220 (1st Cir. 1999); *cf. MacCarone*, 2024 WL 4493563, at *1.

### B. Duress

Mr. Doran argues that the Term Sheet should not be enforced because he signed it under duress. ECF No. 15-1 at 9. In support of this contention, Mr. Doran relies on an affidavit wherein he states that the mediator spoke to him "extremely aggressively," "berate[d]" him, and told him that "this was all that [he] was going to get and if it were not for [the mediator], [he] would have gotten nothing." ECF No. 15-2 at 2. Mr. Doran describes that he "felt extremely intimidated" and let the mediator know that he did not want to sign the proposed agreement. *Id.* He also says his

5

attorney "seemed very annoyed" that he did not want to accept the settlement offer and that he "told both the mediator and [his] attorney that [he] felt extreme pressure to . . . agree to the proposed resolution." *Id.* He concludes that he "signed the Term Sheet under duress that caused a momentary lack of judgment but did so knowing that this was not the final agreement, since, pursuant to the Term Sheet, we still had to execute a 'formal settlement agreement.'"[2] *Id.* at 3.

Challenges to a settlement agreement are governed by the forum state's law. *Tremblay*, 2017 WL 3278951, at *2. Under Rhode Island law, "'duress exists when one by the unlawful act of another is induced to perform some act under circumstances which deprive him of the exercise of free will.'" *Miller v. Metro. Prop. & Cas. Ins. Co.*, 111 A.3d 332, 342 (R.I. 2015) (quoting *Peabody v. Tenney*, 18 R.I. 498, 502 (1893)). Duress "is not shown by the fact that one was subjected to personal embarrassment, a difficult bargaining position or the pressure of financial circumstances." *Miller*, 111 A.3d at 343. Mr. Doran does not allege that the mediator or his attorney made any threats or engaged in unlawful conduct to induce him to sign the Term Sheet.

Mr. Doran's duress argument also fails because "one cannot successfully claim duress as a defense to a contract when he had an alternative to signing the agreement." *Id.* Mr. Doran's self-described "momentary loss of judgment" is not akin to the complete deprivation of free will, and despite the "extreme pressure" he felt to settle the matter, he retained the option of refusing to sign the Term Sheet, walking away from the mediation, and exploring other avenues towards

---

[2] Despite Mr. Doran's averment that he understood the parties "still had to execute a 'formal settlement agreement'" (ECF No. 15-2 at 3; *see* ECF No. 13-2 at 3), none of the terms in the term sheet are subject to further negotiation. The plain language of the Term Sheet is clear that it is "binding," and that any forthcoming settlement agreement will be "based on the terms set forth in this Term Sheet." ECF No. 13-2 at 2, 3. Mr. Doran's "subjective belief that the agreement was not 'final' does not bar enforcement in the face of [his] assent—in writing—to the memorandum's unambiguous terms." *Fid. & Guar. Ins. Co.*, 541 F.3d at 6 ("[T]he fact that the hand-written agreement contemplated execution of a more formal agreement does not preclude enforcement of the hand-written agreement.").

settlement or proceeding to trial. *See id.* ("Despite [Plaintiff's] protestations that he felt he was without a viable alternative, he certainly could have proceeded to trial," and while the "choice may have been difficult, even gut wrenching, such is the nature of bargaining."). Mr. Doran has not articulated a claim of duress under Rhode Island law.[3]

### III.  CONCLUSION

Because there is no question of material fact regarding the Term Sheet, and because Mr. Doran has not presented facts sufficient to articulate a claim of duress, I recommend that Defendant Fidelity Brokerage Services LLC's Motion to Enforce Settlement Agreement (ECF No. 13) be GRANTED. Any objections to this Report and Recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. *See Brenner v. Williams-Sonoma, Inc.*, 867 F.3d 294, 297 n.7 (1st Cir. 2017); *Santos-Santos v. Torres-Centeno*, 842 F.3d 163, 168 (1st Cir. 2016).

 /s/  Amy E. Moses
AMY E. MOSES
United States Magistrate Judge

January 5, 2026

---

[3] In cases like this where a party alleges that they signed an agreement under distress, the duress generally must emanate from the opposing party to the agreement. *Mitola v. Providence Pub. Bldgs. Auth.*, C.A. No. PC-2015-1646, 2024 R.I. Super. LEXIS 68, at *13 (R.I. Super. Ct. Aug. 16, 2024) (quoting *Bistany v. PNC Bank NA*, 585 F. Supp. 2d 179, 183 (D. Mass. 2008)). Even if Mr. Doran had articulated facts sufficient to constitute duress, he failed to present any facts that Fidelity was aware of, consented to, or caused the conduct at issue. *See Dalo v. Thalmann*, 878 A.2d 194, 198 fn. 4 (R.I. 2005). For this additional reason, his duress argument fails.